Good morning, Your Honors. My name is Kate Schwartz. I'm here from the State Appellate Defender's Office on behalf of Richard Young, the appellant. Good morning, Amy Wotroba on behalf of the people of the State of Illinois. Thank you. May it please the Court, and if I could, to begin, just reserve three minutes for rebuttal, please. In Mr. Young's appeal from the dismissal of his post-conviction petition, he raises a single claim, that he is entitled to withdraw his guilty plea pursuant to people v. White because his sentences did not include mandatory firearm enhancements and are therefore void. The only contested issue between the parties in this case is whether White announced a new rule of law, which in turn dictates whether it may be applied retroactively to Mr. Young's collateral claim. According to the State, what White newly established is that in the context of a guilty plea, it is the prosecutor's presentation of facts rather than the prosecutor's intent that determines whether a firearm enhancement is mandated. The State relies on people v. Avery, currently the only case to hold that White announced a new rule. But Avery's reasoning, which the State adopts in this case, is incorrect. To that end, there are two simple reasons why this Court should reject the State's argument. First, it is premised on a fundamental mischaracterization of the holding in White. And second, even if the State does not misconstrue the holding of White, it does apply a flawed analysis of what constitutes a new rule under Teague. What will become evident upon further discussion of these two points is that, after White, there is nothing new about what the Court or the State may not do. Accordingly, this Court should apply White here and reverse and remand with instructions to permit Mr. Young to withdraw his guilty plea. What does Mr. Young want? Does he want this mandatory add-on? Well, he would like to withdraw his guilty plea and have the opportunity to go to trial. So he really doesn't want the sentence? He does not want his sentence to be increased, but he, because of the fact that his sentence is short. Because he's a student of the law, and he doesn't like the fact that he's laboring under a void sentence. Is that what you're saying? I mean, let's just put the elephant right out in the middle of the room. I mean, this is a very unique quirk in the law that puts us all in a position where someone who got exactly what he bargained for, now 13 years later, sees a way out and a way to get back to the trial court and force the State to try a case that's 13 years old when he got exactly what he bargained for. I don't really think that there's a reason for you to answer that question. It's just out there. But in White, first of all, the motion to vacate was had within 30 days. True? True. And in White, he was promised a particular number, and the mandatory supervised release kind of threw a wrench into all of that. Isn't that what the case was about? The court said he didn't really get the benefit of his bargain. I believe you're talking about Whitfield was the case that was about the mandatory supervised release. Okay, I'm sorry. You're right. Right. Excuse me. I was thinking of Whitfield. No, White was within 30 days. Right. In that case, what was he asking for? The situation in White was exactly analogous to the situation here. Except it wasn't 13 years later. Well, Your Honor, I would like to point out that in Mr. Young's case, he too moved to withdraw his guilty plea, in this case within 25 days of entering his plea. And while his basis for moving to withdraw it was not the void sentence, it has been since 25 days after his entry of the plea that he has been trying to withdraw it in this case. But that was, didn't that already, wasn't that reviewed? You're saying this was within 25 days? Are you talking about a case that he tried to move and then it came back? Right. Then he filed a post-conviction petition. So he wasn't seeking 13 years ago to vacate his plea because he wanted to add 25 years to it. No, the first time that that argument as the basis for withdrawal of his guilty plea was on appeal from his post-conviction petition. But... Well, what about these other cases? If we were to accept your argument that Avery was wrongly decided, although there is some authority for that decision, obviously they based it on a review of Teague and the requirements. And the two other cases that sort of seem to suggest otherwise are not from this district. And one of them, the author was reluctant to find that Avery didn't fly. And then the subsequent case of Hunter said, we don't really need to reach it. But in FICTA they suggested that it probably wasn't a new rule. So putting all that aside, what about this notion that there should be remand for a hearing to determine whether the state is prejudiced by this 13-year time period and whether or not they're able to proceed? Should principles of estoppel after a hearing, that is, should the trial court be allowed to have a hearing to find out whether or not this would be a situation viable for basic estoppel principles? No, Your Honor. The court should not remand for a hearing to that nature. And why is that? Well, first I would just as an initial point like to note that the state did not make that argument in its brief. But putting that aside, the reason that the court should not do that is because White provides binding precedent from the Supreme Court and the situation there was exactly analogous to here. And in White, the remedy that was provided was that the defendant was permitted to vacate his guilty plea because the plea agreement was found to be void. Well, the Supreme Court hasn't decided whether or not White should be applied retroactively. So then let's get back to that issue. Absolutely, Your Honor. The two reasons that White should be applied retroactively and that it did not announce a new rule is first because the holding of White was about the authority of the sentencing court to impose pardon me, the authority of the trial court to impose a sentence, which does not announce anything new at all. That is merely a reiteration of the long-held principle that an unauthorized sentence is void. And that has been the case since People v. Arna and its progeny. And of course, that is why White cites ample precedent for that language within its holding. Mr. Young would posit that the holding of White was set forth in paragraph 23 of the court's opinion, that even when a defendant, prosecutor, and court agree on a sentence, the court cannot impose a sentence if it is not authorized by law. And there's nothing new about that. What did they do in, well actually, what did they do as far as Morris, the Supreme Court, when they held that Whitfield was a case that should not be applied retroactively? The situation in Whitfield and Morris, Morris is the case that announced, of course, that Whitfield, which held that Whitfield did announce a new rule. And that is not analogous to the other two reasons. First, it is important to note that factually the cases are distinguishable because this claim and the claim in White are about a void plea. Whereas in Whitfield, what was at issue was a claim from the defendant that he did not get the benefit. And is the plea void because the court and the state didn't follow the statutory requirement of adding on? How much would have been added on? In this case, it would have been 25 years for one, and there is some debate between the parties as to whether it would have been 20 or 25 years for the other conviction. So would it have been, are we talking about adding another 50 years to a sentence? We are, Your Honor. Well, then shouldn't this go back for the trial court and the state and the defendant for this hearing where the state can nolly the other charge, if they so choose? That way, his bargain is still there, which is what he pled for 13 years ago. He is not claiming that his plea is involuntary, is he? No, he is not. He is claiming he wants a new trial. Yes. All right. Now, what about the authority from other states that actually hold, and I am going back to the estoppel theory, that there should be a hearing? Well, within this state, the strongest argument for that is probably People v. Donaldson, but it is important to note that Donaldson did not aggregate White. White and Donaldson exist in harmony with one another because the court in Donaldson specifically distinguished White and explained why the two cases were different, and there were two reasons for that. One reason that the Donaldson court held that the case was different was the fact that the defendant there did not claim that he was improperly admonished regarding the individual sentences. All right. Well, here is my last question to you. Did White announce a new rule of criminal procedure because, here is the because, because this is a plea that is not a plea that is a plea that someone is seeking to vacate 13 years after the fact. It is not within the 30 days. So we have almost 13 years of time passing. And you have stated on the record that the defendant does not want to have a sentence imposed in accordance with the law. What he wants is a new trial and perhaps take the chance that memories have faded, witnesses are lost, and the state can no longer proceed. And so in White, the court said, and of course we have to keep in mind that White was a motion to vacate within 30 days when memories were available. But if it is a rule that must be strictly interpreted so that this sentence is void, is it indeed a new rule of law because there is no other precedent that traditionally allowed a defendant to vacate a plea in circumstances of a 13-year gap so that not because the defendant claimed his plea was involuntary or because he didn't get the benefit of the bargain, which really is totally different from the White case because, well actually in White it wasn't a case of benefit of the bargain. I keep moving back over to Whitfield and I'm misspeaking. But what I mean is, so is this a new hard and fast rule of law which truly prejudices the state because we have a 13-year time frame within which they're supposed to scurry around and try to retry the case at the whim of someone who actually did get the amount of time they wanted? Your Honor, I think that that would be providing too broad of a reading to White. White simply did not provide any conditional language within its holding that it was only applicable in a situation where the state couldn't be prejudiced. No, but what I'm saying is, isn't it indeed a new rule of law? Because can you cite to me any case before White where the state was required to have the case go back and allow someone to vacate a guilty plea that they're not challenging on a voluntary basis to vacate a sentence because the state required, the statute requires a 45-year minimum. And the defendant isn't seeking that benefit of the bargain. He's seeking a new trial in a time frame when perhaps the state can't proceed. Is that not a new rule of law? Well, the remedy that was provided for in White, which is the withdrawal of the defendant's guilty plea, is not a new remedy. And that is something that distinguishes this from the Whitfield-Morris situation. People v. Pullen is an example of a case that held that the defendant was entitled to withdraw his guilty plea because his sentence was void. What did he want, Mr. Pullen? Did he want 45 years extra? Or did he want a new trial after, you know, a lot of time had passed? No, it was factually distinct in the respect that he was not trying to get, his argument was not that his sentence was void because of lengthy firearm enhancement not being imposed. But the underlying point is that the withdrawal of a guilty plea when a sentence is void is not a new remedy. That has always been the remedy previously. And that is the remedy that People v. White applied in its case. But not in pleas of guilty. And you know, Arna was not a plea of guilty. Arna was a trial. And in that case, when we first heard mention of this rule that has been the subject of much discussion, the court, the appellate court sent the case back to impose mandatory consecutive sentences after a trial. So, and then it went up to the Illinois Supreme Court and the Supreme Court said that the sentence was void because it was outside the statutory requirement. There was a mandated consecutive sentence in that case. So when you say it's not a new rule of law, I'm not sure that it isn't in this particular case and in any case where you have a timeframe of, you know, 20, 15, 10, 10 years or more and I don't want to put a number on it, but is that an insurmountable burden? Isn't it announcing indeed a rule that has never been before? Because here we don't have someone who wants to have a sentence conformed to the law. He wants a new trial. And if we have to apply right in the circumstances on collateral review, should it be applied retroactively? It should be applied retroactively, Your Honor, and actually what would be new is remanding for a sentencing hearing about whether the state is, has been prejudiced or remanding to allow the prosecutor to amend the factual basis presented. That notably is what People v. Smith, which is one of the appellate court cases that recently held that White did not announce a new rule and did apply the holding of White and permit a defendant in exactly the same situation as the case here to withdraw his guilty plea. Justice Schmitt in that case opined that perhaps that would be... Well, why do you think it took the Supreme Court to tell us that this was not okay? I mean, does the Supreme Court take cases that are new and novel? I mean, it took a PLA and a decision from the Illinois Supreme Court to tell the trial courts with regard to a relatively new statute, by the way, the 15-2025, the life bill. It took the Illinois Supreme Court to tell the trial courts you can't do this anymore. Doesn't that suggest in and of itself that this is a departure from standard practice? And didn't Avery say that what was happening here was for the first time the courts were being told that the state, with regard to this new law, that the state no longer retains the discretion to negotiate below what the legislature mandated? Isn't that what this was all about? No, Your Honor. The state is arguing essentially that because, and this is taken from People v. Avery, that because there was some lack of clarity prior to White, that is the basis for finding that White announced a new rule with regard to when a mandatory sentencing provision is triggered in the context of a guilty plea. But what the Avery court and the state essentially purport is that any time a judicial decision provides clarity on a point of prior confusion, it announces a new rule. And that logically can't be true because every decision, every case always involves some lack of clarity. If that were not true, then there would never be anything to litigate. And not surprisingly, therefore, the standard set forth in Teague is not that the case provides clarity on a point of prior confusion. The standard for what constitutes a new rule is whether the case breaks new ground or imposes a new obligation. Well, isn't that a new obligation here? Because basically you've told us he doesn't want to have the sentence that he got and he's not claiming his plea is involuntary. He wants to have a trial because the state and the defense and the judge all messed up when they didn't give him 45 years in addition. So isn't that a brand new rule? Aren't we really breaking precedent here? Do you know of any case that says that, that you get to go back to the court and have, get a clean slate? Just point to a case. Anywhere, in any case you have ever been familiar with where that was allowed. And then tell me it's not a new rule. Well, again, I don't know of a case involving the exact factual circumstances where a certain amount of time has passed that is comparable to this case. But People v. Wade and People v. Pullen were both cases where the Supreme Court affirmed orders vacating a guilty plea where the sentence was void. And at its very heart, that is what White was about. The sentence in that case was void and the court applied a long-standing remedy under that circumstance and permitted the defendant to withdraw. Can you remind me, please, what was void about the sentence in Pullen? Why was it void? In that case, the sentence exceeded the statutory maximum, the sentence that the defendant got. Right. And that's kind of a basic rule. We would never, ever want someone to be sentenced to more than what the law allowed. And I think every defendant would have the right to complain from the first day till the day they died if they were given a sentence that was greater than the law allowed. That's not the situation. Avery noted that our Supreme Court has said that one of the ways you can determine whether this is a new rule is was there precedent that commanded this result? So, and Avery said there's no precedent that tells us that with regard to the 15, 20, 25, the life legislation, the state cannot agree to go lower than the enhancement. Isn't that what they said? And Avery, I mean, why isn't the question of whether there was precedent, there was no site, there was no cases that said the state couldn't do what they did here. And so, isn't that the answer? Isn't the answer there was no precedent before that told the state they couldn't do it, and therefore now there's precedent that says you can't do it, and so stop doing it. Well, Your Honor, the holding of white, the white court cited ample precedent for what it considered to be the holding of that case, which is merely that an unauthorized sentence is void. And that is why it cites ARNA and Wade and all of these other cases. The white court did not actually even consider it to be a point of debate whether or not the factual basis for a guilty plea is what triggers a mandatory firearm enhancement. And that is what the Avery court and the state construe to be the holding of white. But we can see even from the very first sentence of the white opinion, that is where the court set forth the, it framed the issue that it was deciding. And in the introductory clause of that sentence, the white court stated that the factual basis entered for a guilty plea is what makes it clear that a defendant is subject to a mandatory sentence enhancement. It presented that as a matter of pre-established fact, not something that was up for debate. So I would argue that the reason the state isn't citing precedent for that is because it's not something it even considered to be a question in the case that it was deciding. It merely felt that the question before it was, when it is clear from the factual basis that a defendant is subject to the enhancement, may the court enter a judgment imposing a sentence that does not include the enhancement, which is about the trial court's authority to impose an unauthorized sentence. And again, there is nothing new about that. This is simply Well, isn't this a new obligation? Part of determining again whether something is a sharp departure, a new rule, is whether the new rule imposes a new obligation on the states. That's correct, Your Honor. And what the state argues is that the new obligation is that a prosecutor cannot provide in its presentation of facts that a firearm was used in the commission of the crime. And in turn, it argues that there's a change to the prosecutor's discretion in negotiating a guilty plea. But the prosecutor has the same discretion it always had to negotiate guilty pleas. It can still argue around firearm enhancements. And so there's no new obligation imposed upon the court, or upon prosecutors. And one example of this Well, but the thing about this case is that we have this 13-year gap. That's the difference. That's the major difference. This isn't a motion to vacate a plea within 30 days. We've got a 13-year time frame. So that's the difference. And I don't know, I just don't see, you know, this and White being identical, and whether White should apply retroactively because you've got a 13-year gap. Both White and Avery, I should, let me say it differently. In White and also in Justice Tice's concurrence, it was specifically noted that with regard to this specific legislation, the discretion that the state's attorney has enjoyed for many years to negotiate lower sentences has been taken away by this legislation that was noted in White, and it was specifically separately noted in the concurrence. So when the Supreme Court looks at a specific new statute and says the purpose of this statute is to take away the state's discretion that they have enjoyed for many years, that's new to me, isn't it? Well, but Your Honor, the White Court still distinguished, still explains that the But this was an interpretation of a new statute. When they said that, they were saying this is what the legislature is trying to do here. The legislature is trying to take away the state's discretion. And so, well, the argument that Avery made was that shows that this is a new rule. But I think that Avery overlooks the fact that the prosecutor still has the discretion to negotiate around firearm enhancement, and that's something that was emphasized by the majority opinion in White and by Justice Tice. It's an invitation to do this little charade that they do out there, and that is that they amend it, they amend it, and then they don't talk about the gun. And then they get away with it. You know, that's just a charade. Well, Your Honor, there have been plenty of prosecutors who have understood that that is what they need to do prior to White being announced, and that's evident from the case that Justice Tice cited, which is a 2004 case, and that notably is the same year that Mr. Young entered his guilty plea. And in that case, the prosecutor amended the indictment for armed robbery with a firearm to read that it was for armed robbery with a dangerous weapon, and properly ensured that the plea agreement would not be void. And that is well before the White case, and it is evident from cases like that that there wasn't wide confusion in the state of Illinois for prosecutors as to what they have to do to ensure that the guilty plea that they negotiate with a defendant is not void. And I would argue that the instruction that the White... Well, isn't White, in itself, an indication that there was confusion because we have a trial judge and two apparently very well-able attorneys, one for the state and one for the state. And that's why we're considering the mandatory firearm enhancement statute. That is true. I mean, obviously, there was a mistake made in this case, and mistakes are made all the time in the law. But whether that means that White broke new ground or imposed a new obligation, I would still argue no, because all that White established is that a prosecutor cannot negotiate a particular sentence in exchange for a plea with a defendant and then turn around at the plea and prove up the facts that it had agreed to negotiate away. Do we take anything from the denial of the PLA? Avery, PLA denial. Do we take anything from that? I would argue that perhaps that does suggest that White does... that the Supreme Court does not believe that White announced a new rule. And I think one indication of that... Did not announce a new rule? Did not announce... Oh, I'm sorry, Your Honor. Well, something that does help to suggest that is the fact that in Donaldson, the Supreme Court addressed a defendant's collateral White based claim. And in that case, the Supreme Court could have refused the defendant's request to withdraw his guilty plea on the basis that White was not retroactively applicable. But it did not do that there. Instead, it affirmed the appellate court's decision finding that the sentence was void and that under the particular exception carved out there, that resentencing was appropriate. Where it can fit in with the statutory mandate. Right. But notably, the Supreme Court in that case did not seize the opportunity that it had to explain White as a new rule. And so I think that does, at the very least, suggest that the Supreme Court itself does not believe that White announced a new rule. And I do believe that it was not granted. And I suppose if we were to follow Avery, that would kind of make the lines clear that the Supreme Court would have to perhaps take the issue because Smith... Right. Perhaps, Your Honor, because as the law currently stands, Avery is the only case in the appellate court that has decided that White announced a new rule. People v. Smith came down under exactly the opposite position. And if we were to go with your position, that would certainly have a little bit of a clear line that maybe this would be a case for. Yes. And, Your Honor, that would also be consistent with the general holding in People v. Cortez, although the factual circumstances were different there. And it was distinguished from, stated that it's not in direct conflict with Avery. But still, the court in Cortez did find that White did not announce a new rule and construed the holding of that case to be about the fact that... That's not what I said. I said it was a different issue. Right. No, I absolutely recognize that you noted that that did not involve the firearm enhancement. So they were distinguishable. But at least it is... I would argue that your opinion suggested that the holding is about the court's authority to impose a sentence. Why don't you save some time for rebuttal? We're way past the time. I'm sorry. Thank you, Your Honor. May it please the Court. Again, Amy Watrova on behalf of the people of the state of Illinois. I guess I'll begin where Justice McBride left off, which is there is indeed now a split in authority between this district and Avery and the third district and Smith. And I think that the split is illustrated... What drives that split is the same thing that drives the difference of opinion between the people and the defense in this case. And that is fundamentally, what is the holding of Pierre White? The defense suggests that the holding of Pierre White is really about the authority of the court to sentence a defendant who pleads guilty to murder that is committed with a firearm and says that the holding of White really is about the concept of ARNA, the concept of void, whether a trial court may sentence outside of the statutory range. But isn't that what ARNA said? The only difference being that in ARNA it was not a plea of guilty, it was a trial. And the appellate court, sua sponte, raised the issue of mandatory consecutive sentencing and it remanded the case to the trial court to impose a consecutive sentence because that's what the statute required. Then the Illinois Supreme Court took that case and affirmed the appellate court's sua sponte ordering of a consecutive sentence in a case where that was mandated. Yes, but I think that if you read Pierre White, ARNA is really more of a peripheral site to what really was at issue in White. You don't get to ARNA to deciding whether or not a sentence that doesn't include the firearm enhancement is void unless you first decide whether the And that's, I think, what the court in Avery recognized, which that the rule of White, which really was a new rule, was that the first-degree murder-fire enhancements that were enacted in 91-404 is automatically triggered when it is part of a factual basis for the underlying offense, regardless of whether the state, in its discretion, which has been long recognized as the executive, seeks to pursue it as an aggravating factor. So you have to answer that question first, and that's really what Pierre White focused on. I mean, ARNA is only cited once. Did they say they weren't seeking the aggravating factor? In Pierre White? Yes. I don't, I know that he was, if I remember the facts correctly, that he was admonished within the 20-60. I don't recall if on the record there was an explicit statement by the parties that they were not seeking the aggravating factor, but I don't think it was disputed in Pierre White by any of the parties that that was the intent in entering into the plea. The question was whether or not that was permissible, both based on the state's longstanding, you know, discretion and authority to enter into such pleas, and then the statutory scheme set by the legislature. Now, should the gap be considered by us? I'm sorry? The gap. The gap in time? Mm-hmm. Well, I think that the gap I mean, what significance does it have? The significance is that it illustrates the purpose behind the Teague retroactivity analysis. I understand what Justice McBride was saying. Pierre White was a direct appeal. Hence, there was no lack of time. But what the rule of Teague does and what the Supreme Court adopted in Flowers was recognize that you should not apply new rules on collateral review for the very reason that Justice McBride pointed out. You're put in a situation There's an obligation, a new obligation. Yes. That they can retry a case 13 years later. Correct. Correct. So that's where that, I think that the gap makes the difference. Because the state has an interest in the finality of judgment, and it also validates court's reliance on reasonable precedent. If you look to the precedent before Pierre White, I don't think anyone could say, and certainly defense has not been able to point a case that would have compelled the conclusion reached by the Supreme Court in Pierre White. Now, certainly they cite ARNA, and certainly they discuss how their decision is not inconsistent with established precedent. But I submit that that's always going to be the case. Because rarely is a high court's opinion ever created out of whole cloth. It's always, if, I mean, I can't think of an instance where it wouldn't be. There may be a few cases in the history of the Illinois Supreme Court and the U.S. Supreme Court where something new is created of whole cloth. Well, Donaldson was not in place when this defendant pled guilty. Donaldson or White? No, I'm, now I'm going to Donaldson? Okay. Yes. Does that have any impact on anything we're doing? That case where the court basically said, I'm trying to, they sent it back, they affirmed the appellate court in which the court had sort of fashioned a remedy where if you can fit in the numbers with the charges, that's what the trial court should do. I submit that the import of Donaldson on this case would be this. The state's primary argument is that pure white should not be applied retroactively, that this court should follow Avery. However, Smith has since come out and defendant cited it in their motion to cite additional authority. We disagree with the holding of Smith, but would, as an alternative, support what Justice Schmidt pointed out, which was, if you, that remand would be possible to allow the state to conform both the indictment or the charging instrument and the factual basis to the agreement of the parties. Now, Smith, I think that those last two paragraphs find support in Donaldson because Donaldson any cases that support the notion that you can send back pleas, not based on a voluntariness challenge, but based on the fact that the sentence imposed wasn't as large as the statute required. There's many cases that indicate whenever a defendant is sentenced to something beyond what he could have received. For example, like the Pullen case, and there's others, when probation wasn't allowable and, or probation was allowable and someone, I don't know. The point is that is there any case law from this state that ever sent back cases to impose a greater sentence at the behest of the defendant because that plea was involuntary or even a voidness challenge? Is there any precedent? Not that I'm aware of. I mean, it's certainly been established that anything in excess of what is statutorily permissible would be void, but that doesn't necessarily mean, as we've seen, it's well established in case law, that the portion of a sentence, for example, that is void, I think that that's part of the problem that we're in. I mean, we could go back to Whitfield. Well, I just don't know if the new rule is that the state doesn't have any discretion to negotiate away the mandatory enhancement, if that's the new rule, or if the new rule is greater than that or larger if you apply it retroactively to cases that are, have some age to them. I think that the new rule, White, is that, well, it's, when you consider it with Justice Tice's concurrence, what she says is implicit in the majority. She explicitly says is that the state still does have discretion going forward from Pierre White to negotiate down to a, to the regular unenhanced murder sentencing range if they amend the charging instrument and put forth a factual basis that does not include the firearm language or trigger, and thereby triggering the enhancement. She says that, that that is the holding of the majority and, you know, courts, I think, are still evaluating whether that is implicit. Some of the language in Pierre White could certainly be, you know, read to suggest that we don't have that authority. However, I think if you read Donaldson, it appears that it seems like what. Did you raise the estoppel argument in Avery? Did we raise the estoppel argument in Avery? Yes. I don't recall off the top of my head, but I could take a quick look. But you haven't done it here. That he's estopped from, yeah. That there should be, you know, some sort of a, well, maybe you didn't. I think that perhaps it was something raised. Here we argued the retroactivity. I know you argued that. I mean, that's the only argument that we put forward in our brief based on Avery. Avery had come out. What were you about to say just now about Whitfield and how that Whitfield played? You said we could go back to Whitfield. We could go back to Whitfield, I think, for, well, one, I think it's kind of an analogous case, just if you look at the fact that it broke new ground. But putting the retroactivity new rule aside, Whitfield introduced contract principles, I think, for the first time explicitly into criminal plea bargain negotiations. And recognized in Morris when they did the retroactivity analysis that not only was that introduction new or novel, but also then that there was a remedy, which was the changing of the sentence to conform with the agreed upon sentence of the parties, or what was the understanding of the parties. And now, if you'll follow my logic, if you segue to Donaldson, Donaldson talks about how there was a mistake, a mistake in law or fact, which frequently happens in contracts, and that within contract law and contract principles, it is proper and appropriate to go back to amend the terms of the contract to give effect to what the agreed intent of the parties was. And that's what it does. The defendant in Donaldson argued that I pled to a specific sentence. I agreed to a specific term of years plus another specific term of years. And the Illinois Supreme Court said, no, you agreed to an overall sentence. So we can go back and change to amend that. There's absolutely, and I think that that analysis in Donaldson supports Justice Schmitt's final concluding paragraphs in Smith, which would suggest an alternate possibility that we could, this court could send a case back to the trial court on a remand, and the parties could be given, the state could be given an opportunity to amend the proofs, the factual basis, and the indictment to conform with what was the intent of the parties, that that would find support in the Donaldson analysis. Is that what you're asking us to do? That would be my secondary argument. My first argument would be to hold, our primary position is that this court should hold that Pierre White does not apply retroactively. And that this would be, clearly the trial court in this case, the defense, and the state were all under the impression, as were, I would submit, all the courts, most courts in Illinois, that the state and the defense could enter it into agreement where a defendant pled guilty to murder within the normal murder sentencing range. And that that understanding changed after White. So that could be deemed a mistake of law, or a mistake of fact, or we did amend Count 1 in this case, you will know, we did strike the while armed with language and changed it to with a firearm, so it could also be construed as maybe a mistake of fact, where we thought that by amending, and then submitting just a regular factual basis, that we were putting forth sufficient facts to put ourselves outside of the enhancement. I don't think anyone would have, when looking at retroactivity of a new rule, I think sometimes it helps clarify to look at what practically would have taken place in the trial court before the decision and after the decision. And I don't think that, I think it's pretty safe to say that neither defendants nor prosecutors nor trial judges would have thought prior to Pierre White that the way to enter into a negotiated plea where all parties were in agreement to a murder within the 20 to 60 year range was to strike all references to a gun or a firearm in the count that was being led guilty to, and then to offer a factual basis that was sanitized of the fact that the murder was committed with a firearm. And that's what Pierre White suggests going forward would be the way to enter into such a plea arrangement. And didn't Donaldson really kind of find like an escape clause, kind of a way to avoid getting to this, to the point that White got to? And Donaldson was able, in Donaldson they were able to refashion the sentence so we can avoid, you know, being in a position where we have to let somebody years later withdraw their plea and go back to square one because of the unique situation where the defendant didn't get as much as he was supposed to get. And then finally White found, the court in White found itself in a position where they couldn't do that. They couldn't refashion the sentence such as they did in Donaldson. And so they for the first time said it's all over. They got to go back to square one. And that was a direct appeal. And I think that Donaldson, which I believe was an appeal from a collateral proceeding, I think that, you know, the Illinois Supreme Court defense counsel posits that they could have answered the retroactivity of White issue in Donaldson. I would respectfully disagree with that. I think that because of the factual differences and the fact that it would not have been appropriate and I think the fact that they dismissed White at the end shows that they're just leaving it for another day. I mean they don't say that White isn't retroactive. They say White is not applicable. Defendant's reliance, Donaldson's reliance on White is misplaced. So I mean I do think that, and then since then we have Avery and Smith. Did it matter in White that he really didn't want to get the firearm enhancement either? He wanted to vacate his plea, go back and start over. And he did it within 30 days. And he did argue as one of the bases for that early on that the enhancements were mandatory. And I would note that in this case defendant, while he did file a motion to vacate his plea, I mean there were motions to withdraw his plea, supplemental motions to withdraw his plea. There was an appeal from that which was affirmed. Then there were post-convictions and supplemental post-conviction filings. And in none of those cases, none of those filings, was the claim that his plea was void based on the lack of enhancements ever raised. Certainly if this was such a clear issue and an outcome that was compelled such that, as defense suggests, we have to apply this retroactively, defendant would have in the course of these years raised it. I mean certainly the firearm enhancements were largely on everybody's mind. You had the Hosschild, Sharpe, Morgan lines of cases. Defendant in White did it. This defendant did not. So I would suggest that that supports the state's position that this was not, that this is a new rule, that the outcome in White was not compelled by existing precedent, and that under the Teague analysis, set forth similar to an Avery, Avery does a very good job of taking Pierre White and the Supreme Court's analysis in Morris and putting them together. And I would submit that this court should follow the well-reasoned opinion in Avery and find that the decision in Pierre White does not apply retroactively. If there are no other questions. Thank you, Your Honors. Thank you. I will keep this brief. I just do want to point out that the state's position that the automatic triggering of the firearm enhancement being the new rule that was applied in White, one, I think, helpful indication for this court to look at is the language that the state and the Avery court seem to be relying on from within White for that. And that comes in paragraph 27 of White's opinion, where the court explained that in that case, in White, the enhancement was triggered because of its inclusion in the factual basis. And I just would note that it's important to consider the context of why the White court provided that language. It was responding to the state's citation of people versus Summers and explaining why the state's reliance on Summers was misplaced. The state had offered that for the fact that it could have conceded a version of the facts without the gun. And the White court agreed that while it could have, unlike in Summers, the prosecutor in White's case did not concede a version of the facts without the gun because it was included in the factual basis. And so that language was part of White's decision because it was explaining why the state's reliance on a particular case was misplaced, not because it was the holding of the case. With regard to the alternate remedy that has been discussed this morning, I would just emphasize that Justice Schmitt did not actually impose the remedy that he suggested in that case in people versus Smith, the alternate remedy, and the two other justices did not even sign on to that opinion. It would be completely unprecedented for this court to find that the appropriate remedy in a situation directly analogous to White is to remand for some... Isn't that what the Donaldson court did? And then the Supreme Court affirmed exactly what they did. They came up with that remedy. Absolutely. They came up with that remedy. Yes. And the Supreme Court affirmed exactly what they did. But what the Supreme Court also did was explain why it was a situation differently from White. And ultimately, the only time that the remedy has not been in a situation like this, has not been remand for the L.C. plea to be vacated, has been when the actual sentence is able to be reconfigured. Here there is absolutely no way for the sentence to be reconfigured. And likewise, Mr. White... Well, if they nollied certain counts, it could be reconfigured. If they nollied certain counts that Mr. Young had pled guilty to? Yes. Vacate the counts? Vacate the pleas on those? Well, if they just strike the firearm enhancement. That's true, Your Honor, but... Your client made a deal, right? And this is the deal he made in the trial court. And he was going to get a certain number of years. Now, if we follow White and we follow through the concurrence in White, and the state at that time had simply struck the firearm enhancement and just found an artful way not to talk about a gun in the factual basis, then your client would be fine with that, right? I mean, he'd have to be fine with that. And so our question, I think the question that Justice McBride just asked, why don't we just do that? Why don't we just send it back, let the state, you know, the deal's there. It's X number of years. Mr. Defendant, you've already agreed to this. We're going to strike the firearm enhancement and we're going to lay a different factual basis. What's the prejudice in that? Well, it's just there is... That's putting him in the position that you're saying he should have been in. Yes, Your Honor, but there is no precedent for sending a case back to amend the factual basis or the indictment. The only precedent that we have is to amend... Well, what did he do in Donaldson? In Donaldson, they essentially made a mathematical change to the minimus. There was no going back to the position before the guilty plea to make changes as far as the actual facts that were before the court. It was strictly a mathematical reconfiguration of the sentences because of the fact... And that was permissible, the court specifically said, because of the fact not only that the sentence was able to be reconfigured consistently  but also because of the fact that the defendant there was properly admonished about the individual sentencing ranges. And in this case, Mr. Young was not admonished at the entry of his guilty plea about the firearm enhancements. Are you sure? But he was admonished about the sentence that he got, right? And he was admonished about the range within which he was sentenced. And so why not just lop off the enhancement? Why don't we just say, you know, you're right. They should have done that. So let's let them do it. Are you sure he wasn't advised? Yes, Your Honor. He was admonished that the sentencing range was 20 to 60 years for the murder and 6 to 30 years for the attempt. There was no discussion at the actual entry of the guilty plea with regard to the mandatory firearm enhancements. Ultimately, because this case is completely analogous to White and because we do not believe that White announced a new rule, we respectfully request that this Court reverse and remand with instructions to permit Mr. Young to withdraw his plea. Thank you. Thank you, guys, for giving us a very interesting case, very well presented. We will take the case under advisement. Court is adjourned.